IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH RAHEEM WILLIAMS,<br><br>Petitioner,<br><br>vs.<br><br>WARDEN, High Desert State Prison,<br><br>Respondent. | No. 2:15-cv-00434-JKS<br><br>MEMORANDUM DECISION |

Joseph Raheem Williams, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Williams is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at High Desert State Prison. Respondent has answered, and Williams has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On May 12, 2011, Williams was charged with murder (Count 1), assault with a firearm (Count 2), and being a felon in possession of a firearm (Count 3) after he shot and killed a man in front of a hotel. The information further alleged as enhancements with respect to Count 1 that Williams had personally used a firearm causing great bodily injury or death and that he had been convicted of a felony and served a prior prison term. Williams pled not guilty and denied the enhancements. Williams also sought to suppress out-of-court statements that he had made to a law enforcement officer, which the trial court ultimately denied. Williams proceeded to a jury trial on May 5, 2011. On direct appeal of his conviction, the California Court of Appeal laid out the following facts underlying the charges against Williams and the evidence presented at trial:

> Lashaun Blake was celebrating her 17th birthday with friends at the Double Tree Hotel. In another room, Alex Hunter was celebrating his 21st birthday with his siblings

and friends. [Williams] and "Goldie" Benoit had joined the party of teenage girls because they knew Blake's boyfriend. Benoit, [Williams] and two of the girls made a trip to a nearby convenience store in Benoit's car. At about the same time, Hunter, his brother and their two sisters were walking toward their cars. Benoit was "driving crazy" as he prepared to park his Ford Taurus.

After yelling at the Hunter group to move, Benoit narrowly missed hitting them with the car. As [Williams] and Benoit got out of the car, there was an exchange of heated words. Hunter followed [Williams'] group as they walked away, challenging them to fight. [Williams] responded to Hunter's unexpected tap on the shoulder by turning and shooting him at a range of less than three to four feet, killing him with a single gunshot wound to the chest. [Williams] and Benoit ran away.

Police arrested [Williams] several days later and questioned him. During the interrogation, [Williams] said only that he "didn't do the shooting." At trial, he asserted self-defense, saying he believed the victim had a gun and was threatening him when he pulled the trigger. The trial court denied [Williams'] motion in limine to exclude evidence from [Williams'] interrogation and the jury saw a video recording of it.

*People v. Williams*, No. C068754, 2014 WL 2211978, at *1-2 (Cal. Ct. App. May 29, 2014).

At the conclusion of trial, the jury found Williams not guilty of murder but convicted him of voluntary manslaughter. The jury also found him guilty of possessing a firearm and found true the allegation that Williams personally used a firearm. The trial court subsequently sentenced Williams to an aggregate term of 22 years' imprisonment.

Through counsel, Williams appealed his conviction, arguing that: 1) the prosecutor misstated the law and the trial court failed to cure it; 2) the trial court erroneously admitted Williams' statement to law enforcement in violation of *Miranda*;[1] 3) the trial court erroneously admitted Williams' statement to law enforcement in violation of *Doyle*;[2] and 4) Williams should

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 479 (1966) (a suspect has a constitutional right not to speak to police after he is arrested and given his *Miranda* warnings).

[2] As a consequence of the right to remain silent, prosecutors are prohibited from commenting on a defendant's post-*Miranda* silence. *Doyle v. Ohio*, 426 U.S. 610, 618-19 (1976); *United States v. Lopez*, 500 F.3d 840, 844 (9th Cir. 2007) (prosecutor's comment on defendant's post-*Miranda* silence violates *Doyle*).

2

be re-sentenced because the trial court ignored the findings of the jury, failed to consider some mitigating factors, and demonstrated an animus toward Williams. The Court of Appeal unanimously affirmed the judgment against Williams in a reasoned, unpublished opinion issued on May 29, 2014. *Williams*, 2014 WL 2211978, at *9. The California Supreme Court summarily denied review on September 10, 2014.

Williams timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court dated February 18, 2015. Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Williams raises the claims he unsuccessfully raised to the California state courts on direct appeal. Specifically, Williams first argues that the prosecutor engaged in misconduct by suggesting in summation that Williams' claim of self-defense had to be rejected because the victim did not have a gun. He next contends in Grounds 2 and 3 that the trial court erroneously admitted Williams' statement to law enforcement in violation of his rights to remain silent. Finally, Williams claims he should be re-sentenced because the trial court ignored the findings of the jury, failed to consider some mitigating factors, and demonstrated an animus toward Williams.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,"

§ 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

4

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Ground 1.     *Prosecutorial Misconduct*

Williams first argues that the prosecutor engaged in misconduct by suggesting in summation that Williams' claim of self-defense had to be rejected because the victim did not have a gun. According to Williams, the prosecutor's argument "implied a lower burden of proof" and shifted the burden of proof to Williams. He contends that the prosecutor's statement impermissibly led the jury to conclude that Williams had to prove the victim had a gun rather than the prosecutor having to prove that Williams did not act in self-defense.

The record reflects that, noting that not a single witness said the victim had a gun, the prosecutor argued: "Why is it so important to the defense that [the victim] have a gun? Because that's the one way they are trying to create this situation where it could be justified to use a gun on an unarmed person. It is not justified to shoot down an unarmed person. That is not what self-defense is about." Defense counsel immediately objected on the ground that the argument misstated the law. The trial court overruled the objection and refused to admonish the jury.

5

Federal habeas review of prosecutorial misconduct claims is limited to the narrow issue of whether the alleged misconduct violated due process. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986). To prevail on such a claim, a petitioner must show that the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Moreover, "[o]n habeas review, constitutional errors of the 'trial type,' including prosecutorial misconduct, warrant relief only if they 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Wood v. Ryan*, 693 F.3d 1104, 1113 (9th Cir. 2012) (quoting *Brecht*, 507 U.S. at 637-38 (1993)).

Under clearly established federal law, a prosecutor's incorrect and improper comments will be held to violate the Constitution only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (per curiam) (quoting *Darden v. Wainright*, 477 U.S. 168, 181 (1986)); *see Sassounian v. Roe*, 230 F.3d 1097, 1106 (9th Cir. 2000). In determining whether the prosecutor's remarks rendered a trial fundamentally unfair, the remarks must be analyzed in the context of the entire proceeding. *Boyde v. California*, 494 U.S. 370, 385 (1990); *Darden*, 477 U.S. at 179-182. Even when prosecutorial misconduct rises to the level of a due process violation, such misconduct provides grounds for habeas relief only if that misconduct is prejudicial under the harmless error test articulated in *Brecht v. Abrahamson*, 507 U.S. 619, 637-638 (1993). *Shaw v. Terhune*, 380 F.3d 473, 478 (9th Cir. 2004).

Upon independent review of the challenged comments in light of these guidelines, the Court concludes that the Court of Appeal's rejection of Williams' claim was neither contrary to,

or an unreasonable application of, clearly-established federal law. As the Court of Appeal concluded:

> On review of alleged misconduct in a closing argument, we must examine the context of the argument as a whole. (*People v. Cole*, *supra*, 33 Cal.4th at p. 1203.) In this case, [Williams] contended that, at the very beginning of the conflict, the victim threw up his hand and raised his shirt to "flash[]" a gun. He went on to testify that he did not know why, but the victim followed him as [Williams] and his friends tried to make their way back to their hotel room. He said the victim persisted in demanding a fight and saying something about a gun. [Williams] said he was trying to avoid a fight by walking away in the moments before he shot the victim. But as [Williams] reached the stairs, he said he felt a pull on his left shoulder as the victim turned him around and suddenly they faced one another at very close range. He said he did not intend to shoot anybody, but "[i]t just happened." He said he did not want the victim to shoot him or pistol-whip him.
> 
> Following the defense objection, the prosecutor continued his closing argument, pointing out that although the victim's actions were not consistent with having a gun, he did talk about fighting, calling [Williams] and his friend cowards. The prosecutor said, "Again, no one is excusing his behavior. He is being a jerk that night. If he would have let it go, he'd still be alive, but he didn't. But he didn't ever talk about having a gun. No one heard him say I'm going to shoot you. He talked about fighting." The prosecutor rhetorically asked whether the victim would not have just pulled the gun out if he had one, instead of tapping [Williams] on the shoulder to say, "I'm talking to you," as one witness had testified.
> 
> Moments later, the prosecutor continued, "As far as the stand your ground, I mean, that's the law . . . . But if you stand your ground, you still are limited to using the force that is necessary under the circumstances, you know, to meet the threat. You can't use any more force than is necessary to meet the threat, even when you are standing your ground." He went on, "the point I was making earlier in my first argument is that you still cannot use any more force than is necessary. [¶] So the decision you have to make then . . . is whether or not [Williams] actually, actually felt that he was in imminent danger of death or great bodily injury requiring the immediate use of force."
> 
> The prosecutor accurately defined the jury's decision as "whether or not [Williams] actually, actually felt that he was in imminent danger . . . of great bodily injury requiring the immediate use of force." Addressing the statement to which [Williams] objected once more, he continued, "And, you know, you can feel that way if another person isn't armed. I mean, that's—that's—if I misspoke before, that is true, you can be in that position where you feel like you have to use deadly force because you feel like you are actually in imminent danger of death or great bodily injury requiring the use of immediate force. The other person doesn't have to be armed for you to meet that point, obviously."
> 
> [Williams] claims the prosecutor "did not clarify his previous misstatement" because he did not make it "explicitly clear" that [Williams'] shooting could be justified even if the victim did not have a gun. He further contends that the trial court abused its

7

discretion when it "implicitly endorsed" the misstatement by overruling [Williams'] objection.

We disagree. As we just recounted, [Williams] testified that, at the time he pulled the trigger, he feared being shot or pistol-whipped by the victim. The prosecutor's comments about the reasonableness of [Williams'] fear were legitimately part of closing argument. In context, the prosecutor's single statement about shooting an unarmed man was not likely to be perceived as an explanation of the law of self-defense but as an attack on the reasonableness of the defense theory and the evidence supporting it. Moreover, we presume that the jury relied on the instructions of the trial court, not the arguments of counsel. (*People v. Morales* (2001) 25 Cal.4th 34, 47.) The jury was instructed to follow the law as explained by the trial court and was told, "If you believe that the parties' comments on the law conflict with my instructions, you must follow my instructions." [Williams] has asserted no objection to the self-defense instruction, CALCRIM No. 505. The prosecutor's statement did not infect the trial with unfairness so as to deprive [Williams] of due process, nor did it employ deceptive or reprehensible methods to persuade the jury.

We find no merit in [Williams'] contention that the trial court "implicitly endorsed" a misstatement of law simply by overruling a defense objection. The instruction was correct and any misstatement by the prosecutor was corrected by the prosecutor and addressed again by [Williams'] closing argument. Among other things, defense counsel argued in closing that the law clearly and undoubtedly gave [Williams] "an entitlement to use self-defense" to avoid "great bodily injury, if not being shot." Defense counsel said "any reasonable person" under the circumstances would believe they were in imminent danger of death or great bodily injury, and he emphasized that even if the victim was not a fighter and did not have a gun, [Williams] was entitled to defend himself if his belief about the threat was reasonable at the time. The jury found [Williams] not guilty of murder, which is inconsistent with [Williams'] claim that they may have adopted the prosecutor's statement that shooting an unarmed man was never justified. There was no prosecutorial misconduct and no prejudice.

*Williams*, 2014 WL 2211978, at *3-4.

That conclusion is both reasonable and fully supported by the record. The challenged statement was simply argument, and the jury was instructed that "[n]othing that the attorneys say is evidence." *See Boyd*, 494 U.S. at 384-85(arguments of counsel generally carry less weight with jury than instructions from the court; the arguments are described in advance to jury as matters of argument, not evidence); *Ceja v. Stewart*, 97 F.3d 1246, 1253 (9th Cir. 1996) (prosecutor did not commit misconduct by asking the jury to draw reasonable inferences based

8

on the evidence presented at trial); *see also Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions."). For the reasons thoroughly and persuasively articulated by the Court of Appeal, Williams is not entitled to relief on this claim.

Ground 2. *Miranda Violation*

Williams next contends that his conviction should be reversed because the trial court erroneously admitted evidence that violated his *Miranda* rights. In *Miranda*, the United States Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444. Under this rubric, an interrogating officer must first advise the potential defendant that he or she has the right to consult with a lawyer, the right to remain silent and that anything stated can be used in evidence against him or her prior to engaging in a custodial interrogation. *Id.* at 473-74. Once *Miranda* warnings have been given, if a suspect makes a clear and unambiguous statement invoking his constitutional rights, "all questioning must cease." *Smith v. Illinois*, 469 U.S. 91, 98 (1984).

A defendant may waive his *Miranda* rights so long as the waiver is "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). A valid waiver of *Miranda* rights depends upon the totality of the circumstances. "The waiver inquiry 'has two distinct dimensions': waiver must be 'voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception,' and

9

'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Berghuis v. Thompkins*, 560 U.S. 370, 382-83 (2010) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). Although some earlier Supreme Court cases had indicated the government had a "heavy burden" to show waiver, *Berghuis* explained that the burden is not too onerous. *Berghuis*, 560 U.S. at 384. Indeed, the waiver may be implied by conduct, and need not be explicit or written. *Id.* at 383.

> If the State establishes that a *Miranda* warning was given and the accused made an uncoerced statement, this showing, standing alone, is insufficient to demonstrate "a valid waiver" of *Miranda* rights. The prosecution must make the additional showing that the accused understood these rights. Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent. . . . As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford.

*Berghuis*, 560 U.S. at 384-85 (citations omitted).

In rejecting Williams' *Miranda* claim on direct appeal, the Court of Appeal explained:

> In this case, a few minutes after issuing *Miranda* warnings, the detective said, "Do you know why you're here?" and offered an explanation to which [Williams] did not respond. After the detective continued, saying several people identified [Williams] as the "shoot[er]" at the hotel, [Williams] responded with a minute-long silence, then said, "Got a little bed in this joint?" After a colloquy about [Williams] being tired from the police chase at the time of his arrest, the detective asked, "What did you do on Saturday, Joseph?" [Williams] responded, "I'm gonna go right back on the ground to sleep." When [Williams] repeated the statement, the detective reflected that, if [Williams] went to sleep, they would not "get very far on what we've got to talk about," to which [Williams] replied, "I don't wanna talk about that, bro."
> After a brief and largely unintelligible exchange about the chase, the detective said, "I'll let you sleep a little bit," and left for about 20 seconds; when he returned, there was a brief conversation in which [Williams] said he wanted to go to jail and the detective said he would be taken to jail after unnamed others had been interviewed. The detective left again for two minutes, returning with photographs. [Williams] acknowledged a photograph of the victim, saying he had "seen him around," then asked again to be taken to jail. The detective said, "Oh you will [but] what you go to jail for [depends] on how this plays out," and showed [Williams] more photographs. [Williams]

> looked at the photographs but deflected questions. A few minutes later, the detective pointedly asked, "Did you not shoot the guy or did you shoot the guy?" to which [Williams] responded, "I didn't do the shooting."
>
> For 13 minutes, [Williams] evaded and deflected the detective's follow-up questions, alternating silence, mumbling, saying he was sleepy and asking to be taken to jail, but never actually responding or asserting his rights; the detective finally confirmed [Williams] had nothing to say and just wanted to go to sleep. In the midst of the detective's follow-up questions, [Williams] twice asked, "This even legal?" to which the detective responded, "We wouldn't do it if it wasn't legal. We're the police." The entire interview lasted about 30 minutes.
>
> The trial court reviewed the recorded interview and concluded from [Williams'] bantering that "[Williams] has apparently extensive contact with law enforcement" and had the "clear ability to communicate to the detective that the interview was over" but "did no such thing." The trial court concluded that the statement "I don't wanna talk about that, bro" referred to the chase preceding [Williams'] arrest, not the shooting. Evaluating the totality of the circumstances and giving deference to the trial court's findings of fact, we conclude that [Williams'] statements could be interpreted by a reasonable police officer as expressions of frustration rather than an invocation of the right to remain silent. (*See People v. Rundle* (2008) 43 Cal. 4th 76, 115, *disapproved on other grounds in People v. Doolin* (2009) 45 Cal. 4th 390, 421 [right to silence not invoked by expressions of frustration or animosity or refusal to discuss a particular subject]; *People v. Silva* (1988) 45 Cal.3d 604, 630 [same].) We conclude [Williams] did not effectively invoke his *Miranda* right to halt the questioning.

*Williams*, 2014 WL 2211978, at *5.

Although the circumstances of the questioning and Williams' statements may give this Court pause, the record amply supports that the state appellate court properly considered the totality of the circumstances in determining whether Williams understood and voluntarily waived his *Miranda* rights. That conclusion was not an unreasonable determination of the facts in light of the record.

"[W]hen a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants" to invoke the privilege. *Davis v. United States*, 512 U.S. 452, 461 (1994). Indeed, clarifying questions "minimize the chance of a confession being suppressed due to subsequent judicial

11

second-guessing as to the meaning of the suspect's statement." *Id.* However, the Supreme Court has expressly "decline[d] to adopt a rule requiring officers to ask clarifying questions." *Id*. at 461. Rather, "[i]f the suspect's statement is not an [] unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning." *Id.* at 461-62.

In light of *Berghuis*, 560 U.S. at 383, and its progeny, this Court cannot find that the state court's determination that Williams' statements were not involuntary within the meaning of the Due Process Clause contravenes or unreasonably applies federal law. *See Salinas v. Texas*, 570 U.S. 178, 186 (2013) ("We have before us no allegation that petitioner's failure to assert the privilege was involuntary, and it would have been a simple matter for him to say that he was not answering the officer's question on Fifth Amendment grounds."); *United States v. Plugh*, 648 F.3d 118, 127 (2d Cir. 2011). Williams is therefore not entitled to habeas relief on this claim.

Ground 3.     *Doyle Violation*

Williams further contends that, even if his *Miranda* rights were not violated, the trial court nonetheless violated his constitutional rights by allowing the prosecutor to show the jury his postarrest interview and describe his nonanswers as proof of guilt. As a consequence of the right to remain silent recognized in *Miranda*, prosecutors are prohibited from commenting on a defendant's post-*Miranda* silence. *Doyle*, 426 U.S. at 618-19; *Lopez*, 500 F.3d at 844 (prosecutor's comment on defendant's post-*Miranda* silence violates Doyle). The rationale for this rule "rests on the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial." *Wainwright v. Greenfield*, 474 U.S. 284, 291 (1986) (citation and internal

quotation marks omitted) (holding that prosecution may not use defendant's silence during case-in-chief).

In considering this claim on direct appeal, the Court of Appeal stated, "The prosecutor's comments suggested that [Williams'] failure to tell police he was defending himself proved that he was not. If [Williams] had unambiguously cut off questioning or otherwise asserted his right to remain silent, the evidence would have been inadmissible under *Doyle*. But as we explained [in rejecting Williams' *Miranda* claim], he did not. In fact, at trial, [Williams] said he was evasive because he did not trust the detective and did not want to talk to him." *Williams*, 2014 WL 2211978, at * 7. The appellate court ultimately concluded, however, that "it is not necessary to decide whether a series of evasive answers punctuated by silence ought to be excluded from evidence under *Doyle*, because we conclude that, in this case, any error in admitting or allowing comment on the recorded interview was harmless beyond a reasonable doubt." *Id.*

Similarly, under federal law, a *Doyle* error does not entitle a petitioner to habeas relief unless it "'had [a] substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 766 (1946)); *cf. Greer v. Miller*, 483 U.S. 756, 768-69 (Stevens, J., concurring) (explaining the different standard applied to a *Doyle* error on direct review to that applied on habeas review). When determining whether a *Doyle* violation constitutes harmless error, this Court considers three factors: "[1] the extent of comments made by the witness, [2] whether an inference of guilt from silence was stressed to the jury, and [3] the extent of other evidence suggesting defendant's guilt." *United States v. Velarde-Gomez,* 269 F.3d 1023, 1034 (9th Cir. 2001) (en banc) (quoting *United States v. Newman*, 943 F.2d 1155, 1158 (9th Cir. 1991)).

13

The Court of Appeal reasoned:

> [Williams] admitted that he was carrying a gun on the night of the shooting, even though he knew there was a warrant for his arrest and he could not legally possess a gun. He said he had the gun with him because he expected to return it to its owner who was "usually . . . around" when there were girls and drugs. He admitted that he spent the evening drinking, smoking marijuana, snorting cocaine and "popping" Ecstasy pills while "shooting dice" and listening to music. [Williams] said the victim "flashed" a gun in his waistband from a distance of 30 or 40 feet but, as he approached, the victim appeared to want a fistfight, not a gun battle. The victim did not actually have a gun and [Williams] admitted his vision was poor. [Williams] said he was "high" and was just trying to get away when the victim pulled his shoulder and was suddenly facing him. He said he did not have it in his mind to shoot anybody but he did acknowledge shooting the victim.
>
> The trial court instructed the jury that either heat of passion or imperfect self-defense could reduce the murder charge to voluntary manslaughter. It also instructed the jury that if [Williams] believed there was imminent danger, the belief "must have been reasonable," that a person is "only entitled to use that amount of force that a reasonable person would believe is necessary" and if [Williams] used more force than was necessary, "the killing was not justified." The jury's verdict of manslaughter, but not murder, indicates that [Williams] persuaded the jury he was provoked or that his fear of imminent danger was reasonable, despite his failure to assert self-defense in the police interview. But the jury also must have concluded that he used more force than was necessary. Given [Williams'] own testimony that the victim was spoiling for a fistfight, suddenly shooting him in the chest at close range was an excessive response that necessarily would have rendered the killing "not justified," regardless of how [Williams'] demeanor during the police interview was construed. The guilty verdict was "surely unattributable to" the admission of the interrogation evidence. Any error was harmless beyond a reasonable doubt.

*Williams*, 2014 WL 2211978, at *7-8.

The appellate court's harmless determination is both reasonable and fully supported by the record. Here, the challenged comments were brief, and, as the Court of Appeal recounted, the evidence against Williams was overwhelming.[3] An independent review of the record reflects

---

[3] Other courts have admonished that harmless error review should not be confused with the sufficiency of the evidence inquiry required under *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). *See, e.g.*, *Jensen v. Clements*, 800 F.3d 892, 902 (7th Cir. Sept. 8, 2015) ("Time and time again, the Supreme Court has emphasized that a harmless-error inquiry is not the same as a review for whether there was sufficient evidence at trial to support a verdict."). The Court's reliance on the overwhelming evidence against Williams in finding any error harmless does not

14

that the appellate court's harmless determination is neither unreasonable or in contravention of Federal law. Williams is thus not entitled to relief on his *Doyle* claim either.

Ground 4.     *Sentencing Error*

Finally, Williams claims that the trial court erred in sentencing him because it ignored the jury's findings, failed to consider mitigating factors, and demonstrated animus toward him. As an initial matter, Respondent argues that the state appellate court found Williams' sentencing claim forfeited under California's contemporaneous objection rule and thus the claim is procedurally defaulted from federal habeas review. Docket No. 22 at 44 (citing *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (a federal court will not review a claim if the state court's rejection of the claim rests on a state law ground that is independent of the federal question and adequate to support the judgment). The Ninth Circuit has repeatedly recognized and applied the California contemporaneous objection rule in affirming denial of a federal habeas petition on grounds of procedural default where there was a complete failure to object at trial. *See, e.g.*, *Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005); *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004).

Respondent also correctly notes the claim was not properly exhausted in state court. Docket No. 22 at 43. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). To be deemed exhausted, a claim must have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To

---

simply focus on the sufficiency of the other evidence, but rather properly "look[s] at the influence the improperly admitted [evidence] had on the verdict," in light of a "host of factors," including the overall strength of the prosecution's case. *Id.* at 904 (citations omitted).

have properly exhausted his state court remedies, Williams must have presented both the legal arguments and the factual basis to the highest state court. *See Peterson v. Lampert*, 319 F.3d 1153, 1155-56 (9th Cir. 2003). As Respondent correctly notes, although Williams raised his sentencing claim on direct appeal to the California Court of Appeal, he failed to present it to the California Supreme Court in his petition for review. Consequently, the claim is unexhausted and subject to dismissal on that ground. *See Rhines v. Weber*, 544 U.S. 269, 275-78 (2005).

In any event, Williams is not entitled to relief on the merits of his sentencing claim. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). The constitutional guarantee of due process is fully applicable at sentencing. *See Gardner v. Florida*, 430 U.S. 349, 358 (1977). However, state law sentencing errors are not cognizable on federal habeas review. *See Miller v. Vasquez*, 868 F.2d 1116, 1118-19 (9th Cir. 1989). Moreover, as the Ninth Circuit has explained, a petitioner's contention that a state trial court improperly exercised its discretion under state sentencing law generally does not allege any cognizable claim for federal habeas relief. *See Brown v. Mayle*, 283 F.3d 1019, 1040 (9th Cir. 2002), *vacated on other grounds*, 538 U.S. 901 (2003), remanded to 66 F. App'x 136 (9th Cir. 2003). Nevertheless, a federal court may vacate a state sentence imposed in violation of due process, for example, if a state trial judge enhanced a sentence based on materially false or unreliable information or based on a conviction infected by constitutional error. *See Townsend v. Burke*, 334 U.S. 736, 741 (1948); *United States v. Hanna*, 49 F.3d 572, 577 (9th Cir. 1995); *Walker v. Endell*, 850 F.2d 470, 477 (9th Cir. 1987).

Williams fails to establish a due process violation here. He does not show that his sentence was based on materially false or unreliable information or that it was the product of improper judicial animus. Although the court chose to impose the maximum term on Williams' manslaughter conviction, there is no evidence in the record to suggest that vindictiveness or any other improper criterion influenced the trial court's sentencing decision. Rather, the record supports the Court of Appeals' determination that, "[i]n sentencing [Williams], the trial court articulated various aggravating and mitigating factors" and "concluded the aggravating factors far outweighed the mitigating factors." Thus, his challenges to his sentence present pure state-law claims which are beyond the purview of this Court in a federal habeas proceeding. *Swarthout*, 131 S. Ct. at 863; *see also Bell v. Cone*, 543 U.S. 447, 455 (2005). Similarly, the state courts' determination that the sentence imposed did not violate state law is an interpretation of state law that is binding on this court in consideration of the habeas petition. *Estelle*, 502 U.S. at 67-68; *see Walker v. Endell*, 850 F.2d 470, 476 (9th Cir.1987).

Furthermore, to the extent Williams' claim could be liberally construed to assert a violation of the Eight Amendment's prohibition against cruel and unusual punishment, such claim is also without merit. While the Supreme Court has stated that "[a] gross disproportionality principle is applicable to sentences for terms of years," it has further cautioned that it would be the "exceedingly rare" and "extreme" case which would involve a sentence which is "contrary to" or an "unreasonable application of" this principle. *Lockyer v. Andrade*, 538 U.S. 63, 72, 73 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in judgment)); 28 U.S.C. § 2254(d)(1). Here, the California Supreme Court upheld Wiliams' aggregate sentence of 22 years' imprisonment

17

where he was convicted of manslaughter, "had engaged in a 'continuous pattern of crime from the age of 12,' . . . had a prior prison term, [had been] on parole, and . . . had a poor parole record." Williams cannot demonstrate that his is one of the exceedingly rare cases in which the sentence imposed raises an inference of gross disproportionality when compared to the crime committed. *See, e.g.*, *Ewing v. California*, 538 U.S. 11, 29-30 (2003) (sentence of 25 years to life for grand theft of $1,200 of golf clubs was not cruel and unusual); *Lockyer*, 538 U.S. at 77 (two consecutive sentences of 25 years to life for petty theft was not cruel and unusual). The California Supreme Court's affirmance of Williams' sentence was therefore not "contrary to, or . . . an unreasonable application of," the gross disproportionality principle, the contours of which are unclear. *Lockyer*, 538 U.S. at 72-73. Williams therefore cannot prevail on any challenge to his sentence.

## V. CONCLUSION AND ORDER

Williams is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to grant a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is directed to enter judgment accordingly.

Dated: August 5, 2019.

/s/James K. Singleton, Jr.<br>JAMES K. SINGLETON, JR.<br>Senior United States District Judge